J-A11034-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS OWNER TRUSTEE FOR VMTG ASSET TRUST | : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : : : | No. 958 MDA 2025 |
| KIMBERLY SCHAEFFER, A/K/A KIM SCHAEFFER, IN HER CAPACITY AS ADMINISTRATRIX CTA AND DEVISEE OF THE ESTATE OF DENNIS J. NICE, A/K/A DENNIS NICE; DENNIS M. NICE, IN HIS CAPACITY AS DEVISEE OF THE ESTATE OF DENNIS J. NICE, A/K/A DENNIS NICE; PATRICIA DOAK, IN HER CAPACITY AS DEVISEE OF THE ESTATE OF DENNIS J. NICE, A/K/A DENNIS NICE | : : : : : : : : : : : : : : : | |
| APPEAL OF: KIMBERLY SCHAEFFER | : | |

Appeal from the Order Entered June 24, 2025
In the Court of Common Pleas of Fulton County
Civil Division at No:  2019-00020

BEFORE:  BECK, J., NEUMAN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:          **FILED JUNE 30, 2026**

In this protracted mortgage foreclosure action, Kimberly Schaeffer, a/k/a Kim Schaeffer (Appellant), in her capacity as Administratrix CTA and Devisee of the Estate of Dennis J. Nice, a/k/a, Dennis Nice (Decedent),

appeals *pro se*[1] from the order denying her petition to open default judgment and strike summary judgment. We affirm.

*Case History*

On January 22, 2019, Wells Fargo Bank, N.A. (Wells Fargo) filed a complaint in mortgage foreclosure against Appellant and her siblings, Dennis M. Nice, in his Capacity as Devisee of the Estate of [Decedent], and Patricia Doak, in her Capacity as Devisee of the Estate of [Decedent].[2] The trial court explained:

> On or about October 11, 2011, [Decedent] executed and delivered to Mortgage Electronic Registration Systems, Inc., as nominee for New Penn Financial, LLC, a mortgage in an original principal amount of $188,000.00 on property located at 933 Dogwood Lane, McConnellsburg, Pennsylvania 17233. The mortgage was recorded in the Office of the Recorder of Fulton County on November 14, 2011 in Book 0547, Page 0970. [Decedent] passed away on February 27, 2018 and had three surviving devisees. These devisees are [Appellant], Dennis M. Nice and Patricia Doak. The devisees subsequently defaulted under the terms of the mortgage after their failure to pay the installments of the principal and interest due on June 1, 2018. [On August 28, 2018, the mortgage was assigned to Wells Fargo Bank, N.A. (Wells Fargo).] Following the default, [Wells Fargo] sent the devisees Notice of Default and Notice in Compliance with Act 6 of 1974, 41 P.S. § 403(a) and Act 91 of 1983, 35 P.S. § 1680.401c, dated August 29, 2018 and December 5, 2018 respectively. On or about January 22, 2019, [Wells Fargo] filed a Complaint in Mortgage Foreclosure…. Defendant, Dennis M. Nice, filed an Answer with New Matter on February 19, 2019. The two other [d]efendants, [Appellant] and Patricia Doak, failed to file answers to the Complaint in Mortgage Foreclosure and default judgment was

---

[1] Appellant has appeared *pro se* throughout the trial court and appellate proceedings.

[2] Dennis M. Nice and Patricia Doak have not filed appeals.

entered against them on August 26, 2019, with damages to be assessed at a later date. On or about September 4, 2019, [Wells Fargo] filed its first Motion for Summary Judgment. This motion was later withdrawn without prejudice on September 17, 2019, to review [Patricia Doak's] request for loan modification. After [Patricia Doak] failed to qualify for loan modification, [Wells Fargo] filed a second Motion for Summary Judgment on or about March 11, 2020. [Wells Fargo] subsequently withdrew the motion without prejudice on April 9, 2020 due to the Covid-19 Pandemic and the resulting foreclosure moratorium issued by the Commonwealth. The mortgage was then properly assigned to Specialized Loan Servicing, LLC. The Assignment of Mortgage was recorded in the Office of the Recorder of Fulton County on August 19, 2021 in Book 674, Page 574 as instrument number 2021-001491. On March 30, 2022, a praecipe to substitute [U.S. Bank Trust National Association, as Owner Trustee for VRMTG Asset Trust (Appellee)] for Specialized Loan Servicing, LLC was filed with th[e trial c]ourt. A third Motion for Summary Judgment was then filed on or about August 16, 2023. [Appellant] failed to file an answer or response to the third Motion for Summary Judgment. On or about February 20, 2024, [Appellee] filed a Praecipe for Determination on the third Motion for Summary Judgment….

Trial Court Opinion (TCO I), 4/5/24, at 1-2.

The trial court entered summary judgment in favor of Appellee on April 4, 2024. On May 6, 2024, upon praecipe of Appellee, the court entered judgment in the amount of $183,699.37.

On March 24, 2025, Appellant filed a petition to open default judgment and strike summary judgment, followed by "an amended version on March 28, 2025." Trial Court Opinion (TCO II), 6/24/25, at 3. The trial court held a hearing on April 29, 2025. Appellant testified that she had lived "in the area" before Decedent died, but "had to leave" due to domestic violence. N.T., 4/29/25, at 10. Appellant believed her "brother and sister were supposed to be taking care of everything." *Id.* at 11. She said she was "emotionally

unable to handle [Decedent] dying and the property and … felt confident that my brother and sister were going to be able to do it." *Id.* However, Appellant also described her later attempts — and frustrations — in communicating with the mortgagees to avoid foreclosure. *Id.* at 13-18. When Appellee's counsel asked Appellant about receiving a copy of the mortgage foreclosure complaint in 2019, Appellant replied: "I think—I know I had—I received one thing … before I moved. I can't remember exactly what it was." *Id.* at 20. Appellant testified that she did not respond to the complaint because she "was busy with my kids," including a child who was experiencing health issues, and she expected her brother and sister could "answer the [c]ourt or whatever." *Id.* at 21. Appellant reiterated that she "thought … they could handle it and I didn't need to be involved." *Id.* at 22. She stated that she moved back to Pennsylvania "somewhere in '24," and "started responding in July 24." *Id.*

On June 24, 2025, the trial court entered an order and opinion denying Appellant's petition. The court explained that it denied relief because Appellant's petition was untimely and Appellant failed to provide a reasonable excuse for the untimely filing. *Id.* at 6-7. The court also found that even if Appellant had a reasonable excuse for the late filing, she failed to present a meritorious defense to the foreclosure action. *Id.* at 8-9.

On July 3, 2025, Appellant filed a notice of appeal.[3] Appellant presents

the following issues for review:

1. Whether the trial court erred by permitting [Wells Fargo] to initiate foreclosure proceedings without properly serving [Appellant] with the statutory pre-foreclosure notices required under Act 6 and Act 91, in violation of 41 P.S. § 403 and 35 P.S. § 1680.403c.

2. Whether the trial court violated [Appellant's] due process rights by overlooking jurisdictional defects and improper service, including notices sent to outdated addresses despite USPS change-of-address records and [Wells Fargo's] failure to conduct a sufficient good-faith investigation to locate [Appellant].

3. Whether the trial court erred in granting summary judgment where [the] loan history and supporting affidavits contained material discrepancies—including duplicate charges, missing endorsements, and unclear signatures—creating genuine issues of fact under Pa.R.C.P. 1035.2.

4. Whether the trial court erred by allowing foreclosure to proceed without verifying [the devisees'] Successor-in-Interest status, in violation of federal servicing rules under 12 C.F.R. § 1024.38(b)(1)(vi), thereby denying [Appellant] access to foreclosure-alternative relief.

5. Whether the trial court failed to apply equitable principles despite evidence of [the mortgagees'] bad faith conduct, dual tracking, and denial of Act 91 assistance and loan modification.

6. Whether the trial court abused its discretion by sustaining [Appellee's] preliminary objections and striking [Appellant's] counterclaims, where Pennsylvania law recognizes that mortgage servicing misconduct may provide valid defenses and claims.

7. Whether the trial court failed to consider [Appellant's] documented hardships and excusable neglect—including

_____

[3] The trial court did not order Appellant to file a Pa.R.A.P. 1925(b) concise statement.

- 5 -

relocation due to safety concerns and lack of actual notice—as grounds for relief from procedural defaults under Pa.R.C.P. 126.

Appellant's Brief at 12-14.

*Discussion*

At the outset, we note that Appellant's arguments are undeveloped. ***See id.*** at 20-28. Although she cites some legal authority in support of her conclusory statements, Appellant does not cite to the record or explain how the legal authority applies to the facts of this case. ***See*** Pa.R.A.P. 2119(a) (requiring that the argument include "such discussion and citation of authorities as are deemed pertinent."); Pa.R.A.P. 2119(c) (requiring "reference to the place in the record where the matter referred to appears."). Consequently, we could find Appellant's issues waived. ***See Lackner v. Glosser***, 892 A.2d 21, 29 (Pa. Super. 2006) (stating, "arguments which are not appropriately developed are waived."); ***see also Bombar v. West Am. Ins. Co.***, 932 A.2d 78, 93 (Pa. Super. 2007) (stating, "This Court will not act as counsel and will not develop arguments on behalf of an appellant.").

We further observe that Appellant's arguments relating to the April 4, 2024 entry of summary judgment in favor of Appellee are not properly before us. As Appellee states, Appellant "cannot collaterally attack the summary judgment" and "raise arguments or evidence for the first time on appeal." Appellee's Brief at 22; ***see also*** Pa.R.A.P. 302(a) (stating, "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").

With respect to the trial court's June 24, 2025 order denying Appellant's request to open the default judgment, we discern no error. This Court has explained:

> A petition to open a default judgment is an appeal to the equitable powers of the court. The decision to grant or deny a petition to open a default judgment is within the sound discretion of the trial court, and we will not overturn that decision absent a manifest abuse of discretion or error of law.

*Green Acres Rehab. & Nursing Ctr. v. Sullivan*, 113 A.3d 1261, 1270 (Pa. Super. 2015) (citation omitted).

Generally, a trial court will open a default judgment if the defendant: (1) promptly filed a petition to open the default judgment; (2) provided a reasonable excuse or explanation for failing to file a responsive pleading; and (3) pleaded a meritorious defense to the allegations contained in the complaint. *US Bank N.A. v. Mallory*, 982 A.2d 986, 994–95 (Pa. Super. 2009). The trial court "cannot open a default judgment based on the 'equities' of the case when the defendant has failed to establish all three of the required criteria." *Id.* at 995 (citation omitted). Regarding the first two criteria:

> The law does not establish a specific time period within which a petition to open a judgment must be filed to qualify as timel[y]. Instead, the court must consider the length of time between discovery of the entry of the default judgment and the reason for delay.
>
> ***
>
> In cases where the appellate courts have found a "prompt" and timely filing of the petition to open a default judgment, the period of delay has normally been less than one month. *See Duckson v. Wee Wheelers, Inc.*, ... 620 A.2d 1206 (Pa. Super. 1993) (one day is timely); *Alba v. Urology Associates of Kingston*,

... 598 A.2d 57 (Pa. Super. 1991) (fourteen days is timely); *Fink v. General Accident Ins. Co.*, 594 A.2d 345 (Pa. Super. 1991) (period of five days is timely).

\*\*\*

With regard to the second prong, "[w]hether an excuse is legitimate is not easily answered and depends upon the specific circumstances of the case. The appellate courts have usually addressed the question of legitimate excuse in the context of an excuse for failure to respond to the original complaint in a timely fashion."

*Myers v. Wells Fargo Bank N.A.*, 986 A.2d 171, 176 (Pa. Super. 2009) (some citations omitted).

In this case, default judgment was entered on August 26, 2019. Appellant filed her petition to open default judgment nearly six years later, on March 24, 2025. This was not a prompt filing. As indicated above, petitions to open default judgment that have been found to have been "promptly filed" were usually filed within a month of the default judgment. *Id.* Here, the trial court explained:

> [Appellant] cites to fleeing domestic violence, and a belief that one [devisee] could act on behalf of all [devisees]. … Although [Appellant] cite[d] excuses[, she did] not explain the six-year delay in filing, and [did] not provide a date or time frame that [she] learned of the entry of default judgment. Additionally, *pro se* status does not entitle a party to any particular advantage because of his or her lack of legal training or understanding of legal concepts, and *pro se* litigants are bound to the same procedural rules as represented parties. *Desk Investment, L.P. v. Murray*, 157 A.3d 491, 494 (Pa. Super. 2017) (internal citations omitted). [Appellant] only cited general excuses for the delay in filing. In the six years since the entry of default judgment, there had been numerous filings in the matter, which [Appellant] had been made aware of. We find that the absence of a specific date or time frame that [Appellant] learned of the

default judgment…, the six-year delay in filing when [Appellant was] notified of other filings on the docket, and the fact that courts in this jurisdiction typically permit opening a default judgment when there is approximately a one-month delay, not six years, do not permit this [c]ourt to open the default judgment.

TCO II at 6-7.

The trial court provided similar reasoning for finding Appellant did not demonstrate a reasonable excuse for her delay in seeking to open the default judgment. The trial court stated:

For the reasons stated in analyzing the first prong, we find that [Appellant has] not provided a reasonable excuse [for her late] filing. A lack of legal training or understanding of procedural requirements will not entitle [Appellant] to any particular advantage. Furthermore, the [c]ourt has not been provided with dates of life events to justify the six-year delay in filing. For that reason, we find [Appellant did] not have a reasonable excuse.

*Id.* at 7.

The record supports the trial court's determination that Appellant failed to promptly file her petition or provide a reasonable excuse for doing so. Without a prompt filing or reasonable excuse for an untimely filing, the trial court could not open the default judgment regardless of the merits of Appellant's defense. **US Bank**, 982 A.2d at 995. Nonetheless, the trial court determined that Appellant did not present a meritorious defense to the foreclosure complaint. The court noted Appellant's claim that she made "good faith efforts to work with the mortgage services." TCO II at 8. The court explained:

We … are also sympathetic to [Appellant's] hardships and sentimental attachment to the property, however, they are not a basis for relief, and are not a meritorious defense. [The

- 9 -

mortgagees] recognized and stated in their pleadings that [they were] not seeking to hold [Appellant] personally liable on the cause of action, instead the action was being brought to foreclose the interests of the [devisees] in the real estate. [Appellee] understands [the devisees'] status as successors in interest in the mortgaged property. Furthermore, a good faith attempt to work with the mortgage servicer is not a defense to a mortgage foreclosure action.

*Id.* at 8-9.

For the reasons discussed above, we conclude that the trial court did not err or abuse its discretion in denying relief.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 06/30/2026

- 10 -